Phil Telfeyan
Natasha Baker
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
nbaker@equaljusticeunderlaw.org

Amy Pritchard
UALR Bowen Legal Clinic
1201 McMath Avenue
Little Rock, Arkansas 72202
(501) 916-5457
ampritchard@ualr.edu

*Attorneys for Plaintiffs*

## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| CYNTHIA EASLEY and TERRY EASLEY, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TERESA HOWELL in her official capacity as PROSECUTING ATTORNEY FOR MALVERN/HOT SPRING COUNTY, MIKE CASH in his official capacity as HOT SPRING COUNTY SHERIFF, <br> Defendants. | Case No. 6:21-cv-06125-SOH <br> (Class Action) |

## INTRODUCTION

1.     Arkansas is the only state in the United States that criminalizes the failure to pay

rent.[1]

2.      Failure to pay rent is traditionally approached as a civil matter, handled in landlord-tenant court. Landlords can pursue evictions for non-paying tenants in landlord-tenant court. Indeed, Arkansas has two civil eviction processes. Landlords can pursue an unlawful detainer eviction (the most common form of eviction) under Ark. Code § 18-60-307 or, in some places, what is known as a 2007 Act eviction under Ark. Code § 18-17-901. Landlords are successful in securing evictions via these civil methods and routinely have the upper hand in these proceedings, since, for example, they almost always have a lawyer to represent them in unlawful detainer cases, whereas tenants do not.[2]

3.      Arkansas is the only state that offers landlords the option of a *criminal* process in addition to civil remedies, turning a civil debt into a criminal offense. Ark. Code § 18-16-101 (the "Criminal Eviction Statute") allows criminal charges to be brought against a tenant if three elements are met: (1) a landlord alleges that a tenant is behind on rent (regardless if the tenant's failure to pay is willful and regardless if the landlord is truthful), (2) the landlord notifies the tenant in writing that she must leave her home because she is behind on rent, and (3) the tenant "willfully and unnecessarily" remains at home more than ten days after receiving written notice.

4.      Every day beyond the 10-day notice period that a tenant remains at home — even

---

[1] Human Rights Watch, *Pay the Rent or Face Arrest: Abusive Impacts of Arkansas' Draconian Evictions Law* 1 (Feb. 2013), https://www.hrw.org/reports/us0113arkansas_reportcover_web.pdf [hereinafter *Pay the Rent or Face Arrest*]; Ark. Gen. Assembly Non-Legis. Comm'n For the Study of Landlord-Tenant Laws Report at 17 (2012), *reprinted in* 35 U. Ark. Little Rock L. Rev. 739 (2013) [hereinafter *Landlord-Tenant Laws Report*]; *Duhon v. State*, 299 Ark. 503, 512 (1989) (Purtle, dissenting) ("Arkansas has won another distinction: it is the only state in the nation which imposes criminal sanctions on a person who does not pay his rent on time.").

[2] Lynn Foster, *Arkansas Eviction Report December 2020*, Arkansans for Stronger Communities (Jan. 13, 2021), https://www.arkstrongcommunities.com/december-eviction-report/ (last visited Aug. 26, 2021) [hereafter *December 2020 Eviction Report*].

if the tenant's failure to pay rent is non-willful — is considered a separate criminal offense, subject to excessive fines of up to $25 per offense. Ark. Code § 18-16-101(b).

5.      There is no cap on how many criminal offenses or excessive fines a tenant may face. *Id.*

6.      In practice, private landlords use this law to force tenants to self-evict. According to State Representative and landlord Richard McGrew, "This law is really just used to get [tenants] out of the apartment…we just want them out of our apartment so we can re-rent it."[3] Terry Schug, Greene County Landlord Association president, justifies the law as landlords "need[ing] a good way to evict people."[4]

7.      The self-eviction strategy is effective, as a landlord threatening to call the sheriff to arrest tenants for being behind on rent causes tenants to abandon their homes just to avoid the possibility of criminal prosecution.[5]

8.      Tenants who do not self-evict and go to court — who are almost always unrepresented — can be met with judges who tell them to move out or else be jailed for contempt of court.

9.      In practice, tenants are not given the opportunity to present defenses in Criminal Eviction Statute proceedings — as they are in civil landlord-tenant court — and are not given the opportunity to make up for alleged due rent. *Cf. Munson v. Gilliam*, 543 F.2d 48, 53 (8th Cir. 1976). If a tenant offers funds to cover a portion or all of the alleged due rent, judges will routinely tell the tenant that it is the landlord's decision whether to accept the funds. Most landlords will

---

[3] Maya Miller and Ellis Simani, *When Falling Behind on Rent Leads to Jail Time*, ProPublica (Oct. 26, 2020), https://www.propublica.org/article/when-falling-behind-on-rent-leads-to-jail-time [hereinafter *When Falling Behind on Rent Leads to Jail Time*]
[4] *Id.*
[5] *Id.*

refuse the funds, preferring instead that the tenant leave the property.

10.     Supporters of the Criminal Eviction Statute include landlords attempting to circumvent the expense associated with pursuing an eviction through civil landlord-tenant court. According to Hot Springs Landlord Association President Steve Webster, landlords support the Criminal Eviction Statute because they want "a simple, easy to use law that's inexpensive."[6] The Arkansas Realtors Association supports the criminal eviction process because it is "less costly" to landlords than the civil eviction process[7] because landlords must cover their own attorneys' fees in civil cases, whereas in criminal evictions, the taxpayer foots the bill, as the publicly-funded prosecutor assumes that attorney role.[8] In testifying before the Arkansas House Insurance and Commerce Committee on April 5, 2021 on HB1798, an unsuccessful bill to repeal the Criminal Eviction Statute, William Jones, President of the Landlords Association of Arkansas, expressed his support for the law because "it does not require an attorney which saves me (landlords) a considerable amount of money."[9]

11.     Landlords' professed desire for a "cheaper" system to evict tenants — by shifting the financial burden of evictions from landlords in civil evictions to taxpayers in criminal evictions

---

[6] *When Falling Behind on Rent Leads to Jail Time*, *supra* note 3.

[7] *Id.*

[8] *A Deputy Prosecutor Was Fired for Speaking Out Against Jail Time for People Who Fall Behind on Rent*, ProPublica (Nov. 27, 2020), https://www.propublica.org/article/a-state-prosecutor-was-fired-for-speaking-out-against-jail-time-for-people-who-fall-behind-on-rent [hereinafter *Prosecutor Fired for Speaking Out*] ("Landlords told ProPublica they preferred the criminal statute to civil evictions because the criminal process is cheaper. Taxpayers shoulder the cost when county attorneys . . . pursue tenants. In civil eviction hearings, landlords have to cover their attorney fees.").

[9] House Insurance and Commerce Committee Hearing to Debate HB 1798, bill to repeal Criminal Eviction Statute, on April 5, 2021. *Recording available at*: https://www.arkleg.state.ar.us/Committees/MeetingsPast?code=890&ddBienniumSession=2021%2F2021R.

— is not an excuse to trample on tenants' constitutional rights and is ironic given that the underlying issue in these cases is tenants' inability to afford rent.

12.    In the words of State Representative Jimmy Gazaway, the Criminal Eviction Statute is "an abuse of the criminal process"[10]; it uses the "coercive power of the criminal process and the coercive power of the state to essentially evict someone on a civil debt or a civil contract."[11] The scales of justice are tipped too far in favor of landlords looking for a cheap workaround from tenant protections, all at the expense of tenants who are struggling to afford rent.

13.    Legislative efforts have so far been unsuccessful, as many state legislators are themselves landlords and have voted down measures to repeal the law, prioritizing their personal gain over their duty to protect their constituents.[12]

14.    In the midst of an ongoing global pandemic and despite a national moratorium on evictions, Defendants continue to evict vulnerable residents by allowing private landlords to co-opt the criminal legal system to do their bidding, turning publicly-funded police and courts into landlords' private debt collectors and creating debtors' prisons.[13]

---

[10] *Issues That Matter: Renters' Rights and Habitability Online Forum* hosted by League of Women Voters of Pulaski County and KUAR, on Aug. 19, 2021. *Recording available at*: https://www.youtube.com/watch?v=vzpvab7EhuY.

[11] House Insurance and Commerce Committee Hearing to Debate HB 1798, bill to repeal Criminal Eviction Statute, on April 5, 2021. *Recording available at*: https://www.arkleg.state.ar.us/Committees/MeetingsPast?code=890&ddBienniumSession=2021%2F2021R.

[12] In a 2019 effort to repeal the law, 15 of the state's 35 senators voluntarily disclosed that they owned rental property. The bill did not pass. Maya Miller and Ellis Simani, *There's Only One State Where Falling Behind on Rent Could Mean Jail Time. That Could Change.*, ProPublica (March 19, 2021), https://www.propublica.org/article/theres-only-one-state-where-falling-behind-on-rent-could-mean-jail-time-that-could-change [hereinafter *Only One State*]. The latest bill in 2021 to repeal the law, HB1798, was also defeated.

[13] *See* Myesha Braden et al., *Too Poor to Pay: How Arkansas' Offender-Funded Justice System Drives Poverty & Mass Incarceration*, Lawyers' Committee for Civil Rights Under Law (March 20, 2019), https://lawyerscommittee.org/too-poor-to-pay-how-arkansass-offender-funded-justice-

15.     Arkansas has always known that this law creates debtors' prisons and yet has persisted in upholding it for 120 years.[14] The Criminal Eviction Statute was introduced during a dark time in Arkansas' history; an Arkansas State Senator who opposed the law pointed out that "we all know what is done to a poor man in this state who cannot pay his fine. He is sent to jail and compelled to work it out," referring to convict leasing, which was still legal at the time of the law's passing.[15]  Convict leasing was created as a direct response to the passage of the 13th Amendment, which abolished slavery "except as a punishment for crime"; with convict leasing, white Americans could still extract free labor from and maintain control over Black Americans.[16]

16.     Echoing the racist and classist origins of the Criminal Eviction Statute, the vulnerable residents that Arkansas targets with this law remain disproportionately Black and low-

_____

system-drives-poverty-mass-incarceration/ (last visited January 27, 2021) [hereinafter *Too Poor to Pay*]; *When Falling Behind on Rent Leads to Jail Time*, *supra* note 3.

[14] Lynn Foster, *The Hands of the State: The Failure to Vacate Statute and Residential Tenants' Rights in Arkansas*, 36 Univ. of Ark. at Little Rock L. Rev. 1, 6-8 (2013) (quoting Arkansas Senate debate in 1901 when bill was first considered, including remarks from multiple senators that this would result in people being jailed for poverty) [hereinafter *Hands of the State*]. In the words of state Representative Gazaway, who is also a rental property owner, "It's incredibly sad for our state. . . . When you hear that people go to jail because they weren't able to pay a private debt, it's essentially the equivalent of a debtors prison, which you would have thought was part of our history. But apparently it remains alive in Arkansas today." *When Falling Behind on Rent Leads to Jail Time*, *supra* note 3.

[15] *Hands of the State*, *supra* note 14 at 7, quoting Senator Lawrence. Convict leasing was not abolished in Arkansas until 1909, though the incarcerated still often work for free. *See, e.g.*, Whitney Benns, *American Slavery, Reinvented*, The Atlantic (Sept. 21, 2015), https://www.theatlantic.com/business/archive/2015/09/prison-labor-in-america/406177/; Annie McGrew and Angela Hanks, *It's Time to Stop Using Inmates for Free Labor*, Talk Poverty (Oct. 20, 2017), https://talkpoverty.org/2017/10/20/want-prison-feel-less-like-slavery-pay-inmates-work/.

[16] *See, e.g.*, Equal Justice Initiative, *Convict Leasing* (Nov. 1, 2013), https://eji.org/news/history-racial-injustice-convict-leasing/; PBS, *Slavery by Another Name*, https://www.pbs.org/tpt/slavery-by-another-name/themes/convict-leasing/ (last visited Feb. 3, 2021); Ashley Mott, *Fact check: Southern states used convict leasing to force Black people into unpaid labor*, USA Today (July 7, 2020), https://www.usatoday.com/story/news/factcheck/2020/07/07/fact-check-convict-leasing-forced-black-people-into-unpaid-labor/5368307002/.

income, as well as female.[17] From 2011–2021, 42.6% of those arrested under the Criminal Eviction Statute were Black, despite Black Arkansans making up only 15.7% of the state's population and 26.3% of Arkansans living in poverty.[18] Black women alone accounted for more than 25% of those arrests.[19]

17.     By criminalizing poverty, the Criminal Eviction Statute is a form of wealth-based discrimination in violation of the due process and equal protection clauses of the Fourteenth Amendment, as well as the Eighth Amendment's prohibition on the criminalization of status.

18.     Arkansas' Criminal Eviction Statute is also unconstitutional for imposing excessive fines in violation of the Eighth Amendment.

19.     Plaintiffs Cynthia and Terry Easley have been served a failure to vacate criminal eviction notice under Ark. Code § 18-16-101 for non-payment of rent. After their landlord replaced the water tank last year and left them without running water, Plaintiffs stopped paying rent because they could no longer afford rent on top of the new expenses they had to incur as a result of not having running water (such as renting a porta potty and buying bottled water) and other necessary

---

[17] *See, e.g.*, *When Falling Behind on Rent Leads to Jail Time*, *supra* note 3; *Hands of the State*, *supra* note 14 at 8, 56.

[18] Arkansas Crime Information Center, *Failure to Vacate Arrest Rate Data*, Sept. 2021 (on file with Plaintiffs' counsel); Talk Poverty, *Overall Poverty 2020*, Center for American Progress (last visited March 25, 2021), https://talkpoverty.org/indicator/listing/poverty/2020 (Arkansas' overall poverty rate is 16.2%); Data Commons, *Ranking by Population (Below Poverty Level, Black or African American)* (last visited March 25, 2021), https://datacommons.org/ranking/Count_Person_BelowPovertyLevelInThePast12Months_Black OrAfricanAmericanAlone/State/country/USA?h=geoId%2F05&pc=1&scaling=100&unit=%25 (the poverty rate for Black Arkansans is 27.42%); Data Commons, *Ranking by Population (Below Poverty Level, White)* (last visited March 25, 2021), https://datacommons.org/ranking/Count_Person_BelowPovertyLevelInThePast12Months_White Alone/State/country/USA?h=geoId%2F05&pc=1&scaling=100&unit=%25 (the poverty rate for White Arkansans is 13.60%).

[19] Arkansas Crime Information Center, *Failure to Vacate Arrest Rate Data*, Sept. 2021 (on file with Plaintiffs' counsel).

expenses (such as food and medicine). To this day, Plaintiffs do not have running water, yet they are being threatened with criminal prosecution. Plaintiffs are elderly, indigent, and have disabilities requiring use of wheelchairs for mobility.

20.     As a result of these constitutional violations, Plaintiffs request a temporary restraining order, preliminary injunction, and permanent injunction to enjoin Defendants from charging Plaintiffs pursuant to Ark. Code § 18-16-101, and a declaration that Ark. Code § 18-16-101 violates the United States Constitution.

## PARTIES

21.     Named Plaintiffs Cynthia and Terry Easley are married. They are in their sixties and are residents of Malvern, Arkansas. Both plaintiffs have disabilities and use power wheelchairs. Their only source of income is social security disability payments, which amount to less than $1,200/month between the two of them.   Mr. and Mrs. Easley represent themselves as individuals and represent a Class of similarly-situated people subjected to Defendants' wealth-based criminal eviction scheme.

22.     Defendant Teresa Howell is the Prosecuting Attorney for Malvern/Hot Spring County. Teresa Howell (or her successor in office) is named in her official capacity as Prosecuting Attorney for Malvern/Hot Spring County.

23.     Defendant Mike Cash is the Sheriff of Hot Spring County. The Sheriff is an elected county official who serves as the chief enforcement officer of the courts and has custody of the county jail within Hot Spring County. Captain Baker of the Sheriff's Office signed and served the failure to vacate eviction notice on Plaintiffs in April 2021 and did so while acting in his official capacity as an agent of Sheriff Cash and the Sheriff's Office of Hot Spring County. Defendant Cash (or his successor in office) is named in his official capacity as Sheriff of Hot Spring County.

Defendant Cash is referred to herein as "Sheriff."

24.    Under the Supremacy Clause, the United States Constitution is the supreme law of the land.  All government officials must uphold the Constitution, regardless of contrary instructions from state officials, local officials, or judges.

## JURISDICTION AND VENUE

25.    This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, *et seq*.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

26.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants are residents of Arkansas and Hot Spring County.

## FACTUAL ALLEGATIONS

**A.    Plaintiffs Were Served with a Failure to Vacate Eviction Notice Under Ark. Code § 18-16-101 Because They Cannot Afford to Pay Rent**

28.    Plaintiffs Cynthia and Terry Easley moved into their current home in Malvern, Arkansas in March 2019. They signed a month-to-month lease with their landlord for $400/month.

29.    In August 2020, their landlord replaced the water tank and it immediately stopped working.

30.    Since August 2020, Mr. and Mrs. Easley have not had running water.

31.    In November 2020, following an on-site inspection, the Arkansas Department of Health condemned their home's water distribution system and water heater installation and ordered the water service (which had not been working since August 2020) to be terminated until the landlord made necessary repairs, which, to this day, the landlord has not done.

32.    Mr. and Mrs. Easley's November 2020 rent was waived due to the lack of running water, but they have been charged rent since December 2020.

33.    Mr. and Mrs. Easley stopped paying rent in December 2020 because they could no

longer afford to pay rent plus the new expenses they had acquired to compensate for their lack of running water.

34.    Both Mr. and Mrs. Easley have disabilities and chronic health conditions. They use power wheelchairs. Their combined income is less than $1,200/month in social security disability payments.

35.    As a result of not having running water, Mr. and Mrs. Easley started showering at a friend's house. They have had to rent a porta potty (about $100/month), buy water (about $300–500/month) and go to a laundromat via wheelchair to do laundry (about $15/trip). These new expenses incurred because of not having running water add up to more than Mr. and Mrs. Easley's rent.

36.    Mr. and Mrs. Easley also have other necessary expenses, including their electric bill, food, medicine,  transportation, and food and veterinarian bills for their service/emotional support dogs.

37.    In April 2021, Captain Baker of the Sheriff's Office of Hot Spring County served Plaintiffs with a failure to vacate eviction notice, which stated that they had ten days to move out or they would be charged under Arkansas Code §18-16-101 (the criminal eviction, or failure to vacate, statute). The notice stated that the reasons for the eviction were failure to pay rent and noncompliance with the rental agreement.

38.    Plaintiffs never had an opportunity prior to receiving this notice to contest the notice's claims in court and to date, Plaintiffs have not had a court hearing.

39.    Since receiving the notice, Plaintiffs signed a CDC eviction moratorium declaration, for which they qualify.

40.    Since receiving the notice, Plaintiffs have also searched for other housing, but so

far it has been impossible to find something that meets their needs and is something that they can afford. They continue to live in their home — without running water — in the meantime.

41.     The Malvern/Hot Spring Prosecuting Attorney prosecutes tenants under the Criminal Eviction Statute.

42.     Criminal eviction cases are brought in Hot Spring County District Court. The Hot Spring District Court is a county-level court with jurisdiction to hear misdemeanor criminal cases when the alleged conduct occurred within Hot Spring County. The Hot Spring District Court is not a court of record.

## B.     Arkansas Is the Only State that Criminalizes the Eviction Process

46.     As it stands today, Ark. Code § 18-16-101 (the "Criminal Eviction Statute") allows the landlord of a tenant who is late on rent — even by one day — to order the tenant to vacate the premises.[20] If the tenant fails to leave within 10 days, the tenant is guilty of a misdemeanor offense for each day she fails to vacate the premises following the expiration of the 10-day notice. Ark. Code § 18-16-101(b)(1). For each day she fails to vacate the premises following the expiration of the 10-day notice, the tenant must also pay a fine of $1–$25. Ark. Code § 18-16-101(b)(2).

47.     The Criminal Eviction Statute includes no cap on the number of convictions and amount of fines to which a tenant can be subjected. Without a cap, and given that the fines are paid to the state, Arkansas' Criminal Eviction Statute creates a perverse incentive for Defendants to allow fines to accumulate — by delaying hearings, for example — so as to extort as much as they possibly can from renters.

48.     The Criminal Eviction Statute does not require that the tenant's non-payment of

---

[20] Under Ark. Code § 18-16-101, being one day late on rent is enough to invalidate the entire landlord-tenant contract and forfeit the tenant's property interest, without any due process.

rent be willful. The result of this absence of a *mens rea* component is that tenants can be and are prosecuted simply because they cannot afford rent, *i.e.*, their non-payment of rent is not willful.

49.     A landlord's statement is all that is necessary to trigger the criminal process. Under the Criminal Eviction Statute, charges may be filed against a tenant solely on the grounds of a landlord's statement that (1) a tenant did not pay rent on time and (2) the tenant failed to vacate the premises within the 10-day notice period. An arrest warrant or criminal summons can be issued to the tenant solely based on the landlord's statement, without investigation into whether the landlord's statement is true and without an opportunity for the tenant to dispute the amount alleged to be in arrears or to request consideration of the tenant's ability to pay.

50.     Eviction through the Criminal Eviction Statute does not end the renter's nightmare; landlords who wield the criminal process to evict tenants are still free to pursue a separate civil action against the tenant.

51.     Indeed, the Criminal Eviction Statute does not actually provide for eviction; it is a tool to threaten tenants into self-evicting.

52.     Actual eviction orders are obtained through the civil system and landlords have two options to pursue evictions: what is known as an unlawful detainer eviction (the most common form of eviction) under Ark. Code § 18-60-307 and what is known as a 2007 Act eviction under Ark. Code § 18-17-901.

53.     Some landlords will pursue multiple cases against tenants simultaneously. They will press criminal charges under the Criminal Eviction Statute, open a civil eviction claim under the unlawful detainer statute, and open a small claims court case to recoup unpaid rent.

54.     Arkansas' criminalization of tenant evictions lags behind the standards of decency of every other state in the country. Every other state in the nation treats evictions as purely civil

matters. Arkansas has a civil eviction system, yet stands alone in allowing landlords to convert an otherwise civil landlord-tenant dispute into a criminal prosecution.[21]

55.     A bipartisan, non-legislative commission charged by the legislature in 2012 with examining the Criminal Eviction Statute recommended its full repeal, including all provisions that remain in effect today.[22]

56.     The United States Department of Housing and Urban Development ("HUD") forbids the use of the Criminal Eviction Statute in HUD-funded rental housing.[23] Public housing providers may only use eviction methods which HUD has determined meet the basic elements of due process — which does not include criminal evictions. 24 C.F.R. § 966.51.

57.     Arkansas state courts are increasingly finding that the Criminal Eviction Statute is unconstitutional and, therefore, unenforceable.  *See State v. Smith*, Pulaski County Circuit Court Case No. 2014-2707 (2015); *State v. Jones*, Poinsett County Circuit Court Case No. 2014-389; *State v. Bledsoe*, Woodruff County Circuit Court Case No. 2014-77-2. These decisions invalidated the statute in its entirety, including the provisions that remain in effect today. These decisions have reduced the number of prosecutions under the Criminal Eviction Statute across Arkansas, such that prosecutions are now brought only in a few jurisdictions, but prosecutions continue, even during the pandemic.[24]

**C.     Arkansas' Wealth-Based Criminal Eviction Scheme Advances No Legitimate State Interest and Is Irrational; Any State Interest in Ensuring Rent Is Paid Cannot Lawfully Be Satisfied Through Criminal Convictions and Excessive Fines**

---

[21] *See supra* note 1.

[22] *Landlord-Tenant Laws Report*, *supra* note 1.

[23] *Id.* at 16.

[24] Between 2018 and October 2020, 1,050 criminal eviction cases were heard in Arkansas courts. *When Falling Behind on Rent Leads to Jail Time*, *supra* note 3. From January through mid-March 2021, at least three dozen people have been charged under the Criminal Eviction Statute. *Only One State*, *supra* note 12.

58.     Defendants prosecute, jail, and fine tenants as punishment for tenants' non-willful failure to pay rent. Punishing people for failing to make payments that they cannot afford is wealth-based discrimination that violates due process, equal protection, and the Eighth Amendment's prohibition on criminalization of status.

59.     Defendants also impose excessive fines in violation of the Eighth Amendment that are grossly disproportionate to the underlying crime and are imposed without consideration of a tenant's ability to pay.

60.     Defendants' fundamentally unfair criminal eviction scheme is not rationally related to any legitimate government objective because landlords already have a civil system (with two tracks) to address non-payment of rent and eviction issues. The criminal eviction scheme does not actually authorize evictions; it simply uses the threat of criminal conviction to scare tenants into self-evicting.

61.     The scheme is further irrational in imposing excessive fines on tenants who already cannot afford rent and saddling them with criminal records that will make it additionally challenging for tenants to find stable housing and employment, not to mention the psychological toll of having a criminal record.

62.     The Criminal Eviction Statute leaves many who are unlucky enough to be charged with it homeless and in poverty. There is no legitimate government interest in increasing poverty and homelessness.

63.     For its various constitutional violations, the Criminal Eviction Statute must be struck down.

> **a.      Defendants' Use of the Criminal Process Violates Plaintiffs' Procedural Due Process Rights in Violation of the Fourteenth Amendment**

64.     Defendants provide constitutionally deficient due process by (1) allowing criminal

charges to be brought under Ark. Code §18-16-101 solely on the basis of a landlord's statement and (2) by having no cap on the number of criminal charges or excessive fines that can be imposed. Landlords also have access to *two* civil eviction remedies. By forcing tenants to either self-evict or face numerous criminal charges and fines — even if landlords are lying and even when landlords have access to a civil system — Defendants' criminal eviction scheme tips the scales of justice too far in landlords' favor in violation of due process.

65.    Plaintiffs have a property interest in the rental property leased. Plaintiffs also have a liberty interest in not being incarcerated.

66.    Due process requires that Plaintiffs be provided a meaningful opportunity to challenge any deprivation, by a state actor, of their property and liberty interests. *Mathews v. Eldridge*, 424 U.S. 319 (1976).  That meaningful opportunity includes fair notice and adequate standards so that the tenant is aware of what behavior is at issue, otherwise a law can be void for vagueness. *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983); *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

67.    The Criminal Eviction Statute does not provide such a meaningful opportunity.

68.    First, the statute does not require the landlord's notice to the tenant, nor his statement to the court, to be accurate or complete. Landlord notices often lack information as to why the tenant must vacate, how much time the tenant has to vacate, how the tenant can challenge the notice to vacate, etc. According to Human Rights Watch, "[M]any counties issue arrest warrants and file criminal charges purely on the say-so of the landlord, without any further investigation" and Human Rights Watch documented cases where landlords lied about their tenants' status and still managed to bring criminal charges against them.[25]

---

[25] *Pay the Rent or Face Arrest*, *supra* note 1, at 3.

69.     Second, the absence of any cap on the number of charges and fines that can be imposed — separate from the statute of limitations and speedy trial provision — means that the tenant who remains on the property after the 10-day notice period to contest the landlord's notice to vacate is at the mercy of the pace of the criminal process to determine the tenant's total exposure. A tenant who wishes to present a defense has no ability to safely remain at home while doing so because potential criminal exposure increases with each day.[26]

70.     The landlord has the benefit of the entire weight of the criminal system to address what is a private business transaction between two parties who have a contractual dispute. Being late on a mortgage payment, a student loan, or a car payment — all contractual civil debts — does not trigger criminal charges; yet in Arkansas, being late on rent can. The landlord alleges breach of contract and instead of resolving that breach of contract in civil court, as any other breach of contract matter would be resolved,[27] the landlord gets to use the bludgeon of the criminal system to scare the tenant into giving up their home without any kind of due process. In the words of Pulaski County prosecutor Larry Jegley, tenants "are being charged with the crime of basically not paying rent… Allowing one class of businesspeople to avail themselves of criminal process for breach of contract is just fundamentally unconscionable."[28]

71.     The absence of a cap on criminal convictions and fines reinforces the landlord's

---

[26] Even if a tenant were successful in defending her case, the Criminal Eviction Statute provides no mechanism to force the landlord to allow her to return to her home. By contrast, under Arkansas' unlawful detainer statute, a tenant wrongfully evicted could obtain a writ of restitution to return to her home. Ark. Code § 18-60-309(d)(2).

[27] The Arkansas Supreme Court has twice struck down statutes that criminalized a non-fraudulent breach of contract. *State v. Riggs*, 305 Ark. 217 (1991) (invalidating statute criminalizing contractor's failure to pay for materials where statute required knowing or willful failure to pay); *Peairs v. State*, 227 Ark. 230 (1957) (striking down statute criminalizing a contractor's failure to discharge a laborer's lien without element of fraud).

[28] *When Falling Behind on Rent Leads to Jail Time*, *supra* note 3.

overwhelming leverage in violation of due process.

72.     Thus by tipping the scales of justice too far in landlords' favor, Defendants force renters to make an impossible — and unconstitutional — choice between (1) self-evicting (*i.e.* giving up their property interest) without due process to avoid criminal prosecution or (2) remaining on the property (meaning staying in their homes) and potentially face numerous criminal charges, incarceration, and excessive fines.

73.     This criminal eviction scheme violates the procedural due process guarantees of the Constitution.

> **b.     Defendants Also Violate Procedural Due Process by Not Considering Plaintiffs' Ability to Pay**

74.     The Fourteenth Amendment's Procedural Due Process Clause prohibits outcomes in the criminal legal system from turning on a person's ability to make a monetary payment, including and especially incarceration (a.k.a. debtors' prisons). *See Bearden v. Georgia*, 461 U.S. 660, 667 (1983) (defendant cannot have his probation revoked for being too poor to pay restitution); *Tate v. Short*, 401 U.S. 395, 398 (1971) ("[T]he Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full) (quotations omitted); *Williams v. Illinois*, 399 U.S. 235, 244 (1970) ("the Equal Protection Clause of the Fourteenth Amendment requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status"); *Griffin v. Illinois*, 351 U.S. 12, 19 (1956) (plurality opinion) (finding state may not condition criminal defendant's right to appeal on ability to pay for trial transcript because there "can be no equal justice where the kind of trial a man gets depends on the amount of money he has") .

75.     Arkansas' Constitution also prohibits debtors' prisons. Ark. Const. Art 2, § 16 ("No

person shall be imprisoned for debt in any civil action . . . unless in case of fraud.").

76.     Defendants provide constitutionally deficient due process by allowing criminal charges to be brought under Ark. Code §18-16-101 without considering a renter's ability to pay.

77.     A tenant who cannot afford rent has no way to raise indigence as a defense in Criminal Eviction Statute proceedings.

78.     At no point — not prior to filing charges, not at the time of filing charges, not during court appearances, not at the point of conviction, not at the point of imposing excessive fines — is the renter's ability to pay considered. Without considering ability to pay, the Criminal Eviction Statute effectively criminalizes poverty in violation of the due process protections of the Fourteenth Amendment.

79.     The imposition of daily fines without an ability-to-pay assessment as part of the criminal sentence further criminalizes poverty and further violates the procedural due process clause of the Fourteenth Amendment.[29]

80.     If the renter is not in a position to afford the daily fines (which is likely, given that the renter was not in a position to afford rent), then that renter faces the possibility of even more jail time and even more fines in the form of late fees, interest, etc. Any failure to pay criminal debt can have enormous collateral consequences; additional fines and jail time come with all of the inevitable harm to housing, employment, a person's driver's license, child custody, mental and physical health, and more.[30] The Criminal Eviction Statute attempts to extract blood from a stone,

---

[29] Defendants' Criminal Eviction Statute is not only illegal, but self-defeating. If a renter cannot afford rent, it is unclear how that same renter will be able to afford fines on top of rent. These fines, furthermore, go to the state, rather than to the landlord who is alleging he is owed back rent. Indeed, it is for this reason that many landlords will also pursue a separate small claims court case to collect alleged back due rent.

[30] See, e.g., Too Poor to Pay, supra note 13.

resulting only in driving renters deeper into poverty.

81.     Due process therefore requires that the state of Arkansas conduct, at a minimum, pre-deprivation (of the tenant's property and liberty interests) ability-to-pay hearings that consider whether non-payment of rent is willful.

### c.     By Not Considering Plaintiffs' Ability to Pay, Defendants Also Violate Equal Protection

82.     The Fourteenth Amendment's Equal Protection Clause also prohibits outcomes in the criminal legal system, including and especially incarceration (a.k.a. debtors' prisons), from turning on a person's ability to make a monetary payment; hinging a person's liberty on their ability to pay is an unconstitutional form of wealth-based discrimination. *See Bearden*, 461 U.S. at 667; *Tate*, 401 U.S. at 398; *Williams*, 399 U.S. at 244; *Griffin*, 351 U.S. at 19.

83.     Comparing a wealthy and an indigent tenant demonstrates the double standard that the Criminal Eviction Statute creates in violation of the Equal Protection Clause. The Criminal Eviction Statute criminalizes the non-payment of rent; it does not distinguish between willful and non-willful non-payment of rent. In practice, however, wealthy tenants will be extended the benefit of the willfulness standard and poor tenants will not, resulting in a different burden of proof depending on the financial status of the defendant. In other words, the only way a wealthy tenant will be prosecuted under this law is if they willfully do not pay rent, because the wealthy tenant has the means to pay rent. The indigent tenant, on the other hand, who cannot afford rent, will be prosecuted for non-payment of rent even though their non-payment was not willful.

84.     By lacking a willfulness requirement, the Criminal Eviction Statute allows Defendants to implement an unconstitutional two-tier justice system in violation of the Equal Protection Clause where the poor are prosecuted for non-payment of rent even when they cannot afford rent and the wealthy are only prosecuted for non-payment of rent if they willfully refuse to

pay rent. Plaintiffs Cynthia and Terry Easley have been threatened with prosecution because of their non-willful non-payment of rent. They stopped paying rent because they could not afford it along with the necessary expenses they had to incur because their landlord stopped providing them with running water a year ago. Plaintiffs are indigent and living off of a fixed income; their poverty is being criminalized.

85.     Because this law treats similarly-situated people (tenants who have not paid rent) differently, the law is an unlawful form of wealth-based discrimination in violation of the Equal Protection Clause.[31]

> **d.     Defendants Unconstitutionally Criminalize Plaintiffs' Status of Indigence, in Violation of the Eighth Amendment's Prohibition on Cruel and Unusual Punishment**

86.     The Eighth Amendment's prohibition on cruel and unusual punishment (incorporated against the states via the due process clause of the Fourteenth Amendment) prohibits punishing someone's status — such as being alcoholic, *see Robinson v. California*, 370 U.S. 660 (1962), or unhoused, *see Martin v. City of Boise*, 920 F.3d 584, 616-17 (9th Cir. 2019) — and punishing involuntary acts associated with that status. *See Powell v. State of Tex.*, 392 U.S. 514, 550 n.2 (1968) (White, J., concurring) (the "proper subject of inquiry is whether volitional acts brought about the 'condition' and whether those acts are sufficiently proximate to the 'condition' for it to be permissible to impose penal sanctions on the 'condition.'"); *see also Blake v. City of Grants Pass*, No. 1:18-CV-01823-CL, 2020 WL 4209227, at *6 (D. Or. July 22, 2020) (appeal to 9th Cir. filed Oct. 8, 2020) (invalidating law banning "camping" within city limits as

---

[31] Relatedly, a wealthier tenant would be in a better position to secure alternative housing within the extremely brief 10-day notice window. Non-wealthy tenants are left scrambling, often facing homelessness as their only option. Plaintiffs Cynthia and Terry Easley have been looking for other housing since receiving the failure to vacate eviction notice in April 2021, yet with their limited income and disabilities, they have not found anything.

unconstitutionally criminalizing involuntary behavior associated with homelessness); *Driver v. Hinnant*, 356 F.2d 761, 765 (4th Cir. 1966) (holding law unconstitutional for criminalizing public intoxication against a "chronic alcoholic" because it "punishe[d] an involuntary symptom of a status").

87.     The Criminal Eviction Statute punishes Plaintiffs' status of indigence. Just as Plaintiffs' non-payment of rent is non-willful, Plaintiffs' non-payment of rent is an "involuntary symptom[] of a status," namely the status of indigence. *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 282-83 (4th Cir. 2019). Plaintiffs' act of not paying rent is not volitional and is brought about by the condition of poverty; that act is sufficiently proximate to the condition of poverty to bar penal sanctions for that act.

88.     Courts have not required immutable characteristics such as race or age to bring status-based challenges under the Eighth Amendment. Rather, courts have focused on chronic conditions that are not necessarily voluntarily in origin, but lead to involuntary behavior. *See Robinson*, 370 U.S. at 667 (describing addiction as something that can be acquired "innocently or involuntarily"). Like addiction or homelessness, poverty is a chronic, but not necessarily permanent, status that can be acquired innocently or involuntarily (such as through pandemic-induced job loss), which leads to inevitable behaviors: an alcoholic consumes alcohol; an unhoused person sleeps outside; an indigent person does not pay rent.

89.     Poverty is a common condition in Arkansas, particularly during this global pandemic that has led to significant job loss. Arkansas holds the ignoble distinction of ranking 47th in the nation for poverty; in 2020, 16.2% of Arkansans lived *below* the federal poverty line.[32]

---

[32] Talk Poverty, *Overall Poverty 2020*, Center for American Progress (last visited Feb. 18, 2021), https://talkpoverty.org/indicator/listing/poverty/2020. From December 2019 to December 2020,

A common consequence of poverty is the inability to pay for basic necessities, including rent. In August 2021, more than 19% of renting households in Arkansas (representing more than 80,000 households) were behind on rent.[33] Of those households, more than 37% believed themselves to be strongly or somewhat liked to be evicted in the next two months.[34] Indigence is thus a common status in Arkansas that frequently leads to inability to pay rent.

90.     Like criminalizing homelessness or vagrancy, criminalizing failure to pay rent is a way to criminalize poverty and is thus cruel and unusual punishment in violation of the Constitution. *See Powell*, 392 U.S. at 551 (White, J., concurring) (making connection between homelessness and poverty and concluding that a law criminalizing public drunkenness would be unconstitutional if the law targeted unhoused alcoholics, who cannot avoid public places just as they cannot avoid drinking); *Martin*, 920 F.3d at 617 ("just as the state may not criminalize the state of being 'homeless in public places,' the state may not 'criminalize conduct that is an unavoidable consequence of being homeless — namely sitting, lying, or sleeping on the streets.'"); *Wheeler v. Goodman,* 306 F.Supp.58, 62 (W.D.N.C.1969) *vacated on other grounds,* 401 U.S. 987, (1971) (striking down vagrancy statute making it a crime to, *inter alia,* be able to work but have no property or "visible and known means" of earning a livelihood because to "make poverty and misfortune criminal is contrary to our fundamental beliefs, and to arrest and prosecute a person under this statute violates the Fourteenth Amendment.").

---

the unemployment rate in Arkansas also increased from 3.5% to 4.2%. U.S. Bureau of Labor Statistics, *Local Area Unemployment Statistics Map 12 Month Net Change December 2020* (last viewed Feb. 18, 2021), https://data.bls.gov/lausmap/showMap.jsp;jsessionid=AA6375AE3D65E11823AE1D5C621CA1B0._t3_06v.

[33] U.S. Census Bureau, *Week 35 Household Pulse Survey: Aug. 4–16* (Aug. 25, 2021), https://www.census.gov/data/tables/2021/demo/hhp/hhp35.html [hereinafter *Pulse Survey Aug. 4–16*]

[34] *Id.*

91.     That the Criminal Eviction Statute is a two-part scheme, involving first non-payment of rent and then the renter's remaining on the property following notice by the landlord, does not change the analysis because it still "effectively criminalizes" poverty. *Manning*, 930 F.3d at 283 (rejecting argument that Virginia's "two-pronged statutory scheme," which permitted courts to first enter a civil interdiction order to prohibit the sale of alcohol to "habitual drunkards" and then made it a crime for that interdicted person to possess or consume alcohol, changed analysis that statute unconstitutionally criminalized alcoholism).

92.     That Arkansas is the only state that criminalizes poverty via failure to pay rent only strengthens the cruel and unusual nature of the Criminal Eviction Statute. *See Trop v. Dulles*, 356 U.S. 86, 100–01 (1958) (explaining that because "the words of the [Eighth] Amendment are not precise" and "their scope is not static[,] [t]he Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society").

93.     Arkansas' criminalization of indigent Arkansans' inability to pay rent via the Criminal Eviction Statute violates the Eighth Amendment as status-based punishment.

       **e.**     **The Criminal Eviction Statute Allows for Unconstitutional Excessive Fines**

94.     The Excessive Fines clause of the Eighth Amendment is incorporated against the states. *Timbs v. Indiana*, 139 S.Ct. 682 (2019).

95.     The daily fines charged as punishment for violation of Arkansas' Criminal Eviction Statute are excessive and therefore unconstitutional. The fines are excessive because they are grossly disproportionate to the gravity of the alleged underlying criminal behavior and they are imposed without consideration of a tenant's ability to pay.

96.     These fines are grossly disproportionate. The underlying alleged criminal behavior is failure to pay rent, even when that failure to pay rent is non-willful. Failure to pay rent is

traditionally a civil offense; it is a civil offense in every state including Arkansas, though Arkansas is the only state that chooses to also criminalize the act. To impose criminal fines on what is essentially a private and civil landlord-tenant contract dispute is grossly disproportionate.

97.     Furthermore, the underlying alleged criminal behavior of failure to pay rent raises grave constitutional concerns regarding due process and equal protection and does not take into consideration whether non-payment is willful, resulting in a law that criminalizes the status of poverty. "Any fine," like those imposed here, "is excessive if it is imposed on the basis of status and not conduct." *Blake*, 2020 WL 4209227, at *11 (holding fines imposed as part of law banning "camping" within city limits violated Excessive Fines Clause because "the conduct for which [plaintiffs] face punishment is inseparable from their status as homeless individuals, and therefore, beyond what the City may constitutionally punish"). These fines are imposed on the basis of Plaintiffs' poverty status; to impose fines on top of a sentence that is itself unconstitutional is grossly disproportionate in violation of the Excessive Fines Clause.

98.     These fines are also grossly disproportionate because the tenant has no control over the total amount of the fees that she will be assessed and the judge has discretion to apply fees of an enormous range, from $1 to $25 *per day*.[35] In just a matter of one week, that fine can range from $7 to $175. These fines may even, depending on the course of the case, *be equal to or more than what is alleged to be owed in back rent*, contributing to the disproportionality of the fine. If, for example, a case were to take 30 days to resolve, then the tenant could face up to $750 in fines,

---

[35] As a comparison point, minimum wage in Arkansas is $11.00/hour, meaning that the daily fines a court can impose under the Criminal Eviction Statute are the equivalent of more than ¼ of a minimum-wage worker's daily earnings, pre-tax (assuming an 8-hour work day). Ark. Dep't of Labor & Licensing, *Minimum Wage and Overtime*, https://www.labor.arkansas.gov/divisions/labor-standards/minimum-wage-and-overtime/ (last viewed Feb. 9, 2021).

which is equivalent to the median gross rent across the state of Arkansas.[36] It is also, ironically, about the cost to a landlord to pursue a civil eviction through the unlawful detainer method.[37]

99.     Defendants' enforcement of the Criminal Eviction Statute essentially creates a system where it is okay to impose costs on tenants, who already cannot afford rent, but not okay to impose costs on landlords.

100.     When the renter is faced with the choice to either (1) remain in her home and possibly face criminal charges and fines or (2) abandon her home without due process, to charge a renter these excessive fines is to inflict "punishment [that] is more criminal than the crime." *Mills v. City of Grand Forks*, 614 F.3d 495, 501 (8th Cir. 2010). Plaintiffs Cynthia and Terry Easley have chosen option one and remained in their home under the constant stress and threat of criminal prosecution because abandoning their home without due process would mean homelessness.

101.     The failure to consider a person's ability to pay the fine, particularly given that the underlying criminal act concerns the person's ability to pay rent, also makes the fine excessive and unconstitutional. When a renter cannot afford rent and their poverty is the basis for the criminal conviction, imposing additional fines — the amount of which the renter has no control over — is excessive. *Cf. Timbs*, 139 S.Ct. at 688 (taking no position on the question whether a person's income and wealth are relevant considerations in judging the excessiveness of a fine); *U.S. v. Bajakajian*, 524 U.S. 321, 340, n. 15 (1998) (same).

102.     Criminalizing evictions is also constitutionally excessive because it does not advance the state's legitimate interests and therefore has no rational basis. Failing to vacate

---

[36] From 2015–2019, the median gross rent across the state of Arkansas was $745. U.S. Census Bureau, *Arkansas QuickFacts as of July 1, 2019* (last visited Aug. 31, 2021), https://www.census.gov/quickfacts/AR.

[37] *When Not Paying Rent Leads to Jail Time*, *supra* note 3.

involves a private contractual dispute that does not belong in the criminal system and Arkansas already has multiple civil remedies to evict non-paying tenants. These civil proceedings serve precisely the same ends as the failure to vacate statute, except without the stigma and irreversible consequences of a criminal conviction. *See Argersinger v. Hamlin*, 407 U.S. 25, 47–48 (1972) (Powell, J., concurring) ("The consequences of a misdemeanor conviction, whether they be a brief period served under the sometimes deplorable conditions found in local jails or the effect of a criminal record on employability, are frequently of sufficient magnitude not to be casually dismissed by the label 'petty.'") (quotations and citations omitted).[38] What is more, the civil eviction remedies actually provide for eviction, whereas the Criminal Eviction Statute does not include that remedy. It is used to scare tenants into self-evicting. There is no rational basis or legitimate interest in pushing Arkansans into homelessness and poverty, particularly when other avenues are available to effectuate the relief that landlords seek.

103.    The likelihood of fines being assessed is very high. Cases under the Criminal Eviction Statute are regularly prosecuted and nearly 1 in 5 renting households in Arkansas are behind on rent,[39] making them a target for prosecution. *Duffner v. City of St. Peters, Missouri*, 930 F.3d 973, 977 (8th Cir. 2019).[40]

104.    By requiring grossly disproportionate fines that are imposed without an ability to pay determination, the Criminal Eviction Statute violates the Excessive Fines Clause.

### CLASS ACTION ALLEGATIONS

---

[38] Even if a renter is never convicted, the renter can still have a criminal record if they are arrested and booked, with the same collateral consequences as a conviction in terms of housing, employment, etc. *When Falling Behind on Rent Leads to Jail Time*, *supra* note 3.

[39] *Pulse Survey Aug. 4–16*, *supra* note 33.

[40] Tenants facing charges under the Criminal Eviction Statute, should they wish to be represented by a public defender, also have to pay a public defender fee if they qualify, compounding the financial burden of this criminal scheme.

105.    The named Plaintiffs bring this action, on behalf of themselves and all others similarly situated, to assert the claims alleged in this Complaint on a common basis.

106.    A class action is a superior means, and the only practicable means, by which the named Plaintiffs and unknown Class Members can challenge Defendants' unlawful wealth-based criminal eviction scheme.

107.    This action is brought and may properly be maintained as a Class action pursuant to Rule 23(a)(1)–(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

108.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

109.    Plaintiffs propose one Class seeking declaratory and injunctive relief.  The Class is defined as: all people in the state of Arkansas who are or will be unable to afford rent and who are being or will be prosecuted or who are or will be at risk of prosecution under Ark. Code § 18-16-101.

### A.    Numerosity — Fed. R. Civ. P. 23(a)(1)

110.    Between 2018 and  October 2020, 1,050 criminal eviction cases were heard in Arkansas courts.[41] Between mid-March and October 2020, more than 200 criminal eviction cases were filed statewide.[42] The U.S. Centers for Disease Control and Prevention September 4, 2020 order (reissued most recently in August 2021) enacting a national moratorium on evictions is ignored in Arkansas; between September 4, 2020 and October 26, 2020 alone, at least 24 new cases were filed.[43] An additional 24 cases were filed in December 2020.[44] At least three dozen

---

[41] *When Falling Behind on Rent Leads to Jail Time*, *supra* note 3.
[42] *Id.*
[43] *Id.*
[44] *December 2020 Eviction Report*, *supra* note 2.

cases were filed between January and mid-March 2021.[45]

111.    Between mid-March and October 2020, landlords filed 71 criminal eviction charges in the county district court encompassing Texarkana alone — or about one every three days.[46]

112.    Debtors' prisons result from the Criminal Eviction Statute. Between 2018 and November 2020, 45 people were arrested exclusively for failing to pay rent and not leaving their homes.[47]

113.    The snowball effect of Arkansas' Criminal Eviction Statute has resulted in arrests and jail time for failure to appear charges as well. Judges ordered thirty-seven jail sentences for not appearing in court for criminal eviction hearings between 2018 and October 2020.[48] Between mid-March and October 2020, at least seven women were detained or sentenced to jail time for failure to appear.[49]

114.    The issue is not abating. According to the United States Census Bureau Pulse Survey covering August 4–16, 2021, more than 19% of renting households in Arkansas (representing more than 80,000 households) were not caught up on rent.[50] 29% of renting households had little or zero confidence that they could pay the next month's rent (September 2021 rent).[51] Of the tenant households not current on rent payments, more than 37% believed themselves to be strongly or somewhat likely to be evicted in the next two months.[52] All of these tens of thousands of tenants who are behind on rent are at risk of criminal prosecution under Arkansas'

---

[45] *Only One State*, *supra* note 12.
[46] *When Falling Behind on Rent Leads to Jail Time*, *supra* note 3.
[47] *Prosecutor Fired for Speaking Out*, *supra* note 8.
[48] *When Falling Behind on Rent Leads to Jail Time*, *supra* note 3.
[49] *Id.*
[50] *Pulse Survey Aug. 4–16*, *supra* note 33.
[51] *Id.*
[52] *Id.*

Criminal Eviction statute.

**B.** **Commonality — Fed. R. Civ. P. 23(a)(2)**

115.    The relief sought is common to all Class Members.  This Class Action is both a facial challenge to Ark. Code § 18-16-101 and an as-applied challenge; in both cases, this Class Action asks whether enforcement of Ark. Code § 18-16-101 violates the rights of the Class Members. The relief sought is the same for all Class Members: a permanent injunction and declaration against its enforcement so as to protect the constitutional rights of Class Members now and in the future.

116.    Common questions of law and fact exist as to all Class Members, as they all arise from one statute: Ark. Code § 18-16-101. Defendants apply the Criminal Eviction Statute in materially the same manner every day.  The material components of the scheme do not vary from Class Member to Class Member, and the resolution of these legal and factual issues will determine whether all Class Members are entitled to the relief they seek.

117.    Among the most important, but not the only, common questions of fact are:

- Does Ark. Code § 18-16-101 allow for the criminal prosecution of a tenant who cannot afford their rent, without verification of a landlord's allegations regarding rent arrears and without a cap on the number of charges and associated fines?
- Does Ark. Code § 18-16-101 allow for criminal prosecution of a renter without conducting an ability to pay inquiry?
- Do Defendants treat renters who can and cannot afford rent differently, subjecting the latter to threats of arrest, incarceration, and prosecution because of their inability to afford rent?
- Do Defendants criminalize renters' poverty status?
- Do Defendants fine, for any dollar amount, renters because they cannot afford rent?

118.    Among the most important common question of law are:

- Does the Due Process Clause prohibit criminal charges to be brought for failure to pay rent, with no cap on the number of charges and associated fines?

- Does the Due Process Clause prohibit the government from punishing someone for nonpayment of rent without any ability-to-pay inquiry?
- Does the Equal Protection Clause prohibit the government from criminalizing a person's inability to afford rent?
- Does the Eighth Amendment prohibit the government from criminalizing a renter's poverty status?
- Does the Excessive Fines clause of the Eighth Amendment prohibit the charging of daily fines for criminal evictions?

## C.     Typicality — Fed. R. Civ. P. 23(a)(3)

119.    The named Plaintiffs' claims are typical of the other Class Members' claims, and they have the same interests in this case as all other Class Members.  Each Class Member is currently being criminally prosecuted or is at risk of criminal prosecution because she cannot afford to pay rent and the fees associated with failure to vacate under Ark. Code §18-16-101. The answer to whether Defendants' wealth-based criminal eviction scheme is unconstitutional will determine the claims of the named Plaintiffs and every other Class Member.

120.    If the named Plaintiffs succeed in the claim that Ark. Code §18-16-101 violates their constitutional rights, that ruling will likewise benefit every other Class Member.

## D.     Adequacy — Fed. R. Civ. P. 23(a)(4)

121.    The named Plaintiffs are adequate representatives of the Class because their interests in the vindication of the legal claims that they raise are entirely aligned with the interests of the other Class Members, who each have the same basic constitutional claims.  They are members of the Class, and their interests coincide with, and are not antagonistic to, those of the other Class Members.

122.    There are no known conflicts of interest among Class Members, all of whom have a similar interest in vindicating their constitutional rights that Defendants have violated.

123.    Plaintiffs are represented by attorneys from Equal Justice Under Law and Professor Amy Pritchard of the Bowen Legal Clinic at the University of Arkansas Little Rock, all of whom

have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the details of how Arkansas' Criminal Eviction Statute works in practice and the relevant constitutional and statutory law. Class counsel also have a detailed understanding of state law and practices as they relate to federal constitutional requirements.

124.    Counsel have devoted significant time and resources becoming intimately familiar with how Arkansas' Criminal Eviction Statute works in practice and with the relevant state and federal laws.  Counsel have also developed relationships with some of the individuals and families victimized by Defendants' practices.  The interests of the Class Members will be fairly and adequately protected by the Plaintiffs and their attorneys.

**E.    Rule 23(b)(2)**

125.    Class action status is appropriate because Defendants have acted in the same unconstitutional manner with respect to all Class Members.  In enforcing Ark. Code §18-16-101, Defendants enforce a fundamental unfair wealth-based system of criminal eviction: renters who can afford to pay rent are not prosecuted, while those who cannot are faced with eviction, criminal charges, excessive fines, and jail time.

126.    The Class therefore seeks declaratory and injunctive relief to enjoin Defendants from filing and pursuing charges against Plaintiffs pursuant to Ark. Code § 18-16-101. Because the putative Class challenges Defendants' scheme as unconstitutional through declaratory and injunctive relief that would apply the same relief to every Class Member, Rule 23(b)(2) certification is appropriate and necessary.

127.    Injunctive relief compelling Defendants to comply with these constitutional rights will similarly protect each Class Member from being subjected to Defendants' unconstitutional criminal eviction scheme.  A declaration and injunction stating that Defendants cannot file charges

against renters under Ark. Code § 18-16-101 would provide relief to every Class Member. Therefore, declaratory and injunctive relief with respect to the Class as a whole is appropriate.

128.    Plaintiffs seek the following relief and hereby demand a jury in this cause for all matters so appropriate.

## CLAIMS FOR RELIEF

### Count One: Violation of Procedural Due Process

129.    Plaintiffs re-allege, as though fully set forth in this paragraph, all the allegations of this Complaint.

130.    Defendants provide constitutionally deficient due process by (1) allowing criminal charges to be brought under Ark. Code §18-16-101 solely on the basis of a landlord's affidavit and (2) by having no cap on the number of criminal charges or excessive fines that can be imposed. No other civil debt incurs criminal charges. Landlords also have access to *two* civil eviction remedies. By forcing tenants to either self-evict or face numerous criminal charges and fines — even if landlords are lying and even when landlords have access to a civil system — Defendants' criminal eviction scheme tips the scales of justice too far in landlords' favor in violation of due process.

### Count Two: Violation of Procedural Due Process Regarding Ability to Pay

131.    Plaintiffs re-allege, as though fully set forth in this paragraph, all the allegations of this Complaint.

132.    The Fourteenth Amendment's Procedural Due Process Clause prohibits outcomes in the criminal legal system from turning on a person's ability to make a monetary payment.

133.    Defendants provide constitutionally deficient due process by allowing criminal charges to be brought under Ark. Code §18-16-101 without considering a renter's ability to pay.

A tenant who cannot afford rent has no means to raise indigence as a defense in Criminal Eviction Statute proceedings.

134.   Without considering ability to pay, the Criminal Eviction Statute effectively criminalizes poverty.

135.   The imposition of daily fines without an ability-to-pay assessment as part of the criminal sentence further criminalizes poverty and further violates the procedural due process clause of the Fourteenth Amendment.

136.   Due process requires that Defendants conduct pre-deprivation ability-to-pay hearings.

**Count Three: Violation of Equal Protection, 42 U.S.C. § 1983**

137.   Plaintiffs re-allege, as though fully set forth in this paragraph, all the allegations of the Complaint.

138.   The Fourteenth Amendment's Equal Protection Clause also prohibits outcomes in the criminal legal system from turning on a person's ability to make a monetary payment.

139.   The Criminal Eviction statute's lack of a willfulness standard creates an unconstitutional double-standard that violates Equal Protection because it results in similarly-situated tenants being treated differently, with the only difference being how much money the tenant has. A rich tenant will only be prosecuted if their non-payment of rent is willful; a poor tenant will be prosecuted even if their non-payment of rent is involuntarily. This wealth-based discrimination is prohibited by the Equal Protection clause.

**Count Four: Criminalization of Status**

140.   Plaintiffs re-allege, as though fully set forth in this paragraph, all the allegations of the Complaint.

141.    Defendants' criminalization of indigent Arkansans' inability to pay rent via the Criminal Eviction Statute violates the Eighth Amendment as (poverty) status-based punishment. There is no iteration of the law that would eliminate this cruel and unusual punishment as it is inherent to the structure of criminalizing failure to pay rent, which is only ever weaponized against those who are unable to pay.

### Count Five: Excessive Fines

142.    Plaintiffs re-allege, as though fully set forth in this paragraph, all the allegations of the Complaint.

143.    The Excessive Fines clause of the Eighth Amendment is incorporated against the states. *Timbs v. Indiana*, 139 S.Ct. 682 (2019).

144.    The daily fines charged as punishment for violation of Arkansas' Criminal Eviction Statute are excessive and therefore unconstitutional. The fines are excessive because they are grossly disproportionate to the gravity of the alleged underlying criminal behavior and they do not take into consideration a tenant's ability to pay. No rational basis supports the imposition of fines as they do not advance any legitimate state interest given that two civil eviction remedies exist to address contractual disputes between landlords and tenants, including alleged non-payment of rent.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs and the other Class Members request that this Court issue the following relief:

a.    A declaratory judgment that Defendants violate the named Plaintiffs' and Class Members' constitutional rights by threatening them with arrest, criminal convictions, excessive fines, and jail time solely because they cannot make a monetary payment on a civil debt;

b.    An order and judgment preliminarily and permanently enjoining Defendants from enforcing Ark. Code § 18-16-101;

c.      A declaratory judgment declaring that Ark. Code § 18-16-101 is unconstitutional and therefore unenforceable;

d.      An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

Respectfully submitted,

*/s/ Phil Telfeyan*
Phil Telfeyan
*/s/ Natasha Baker*
Natasha Baker*
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
nbaker@equaljusticeunderlaw.org
*Application for Admission *pro hac vice* forthcoming

*/s/ Amy Pritchard*
Amy Pritchard, Ark. Bar No. 2010058
UALR Bowen Legal Clinic
1201 McMath Avenue
Little Rock, Arkansas 72202
(501) 916-5457
ampritchard@ualr.edu


*Attorneys for Plaintiffs*